# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

DERON MOORE,
    Plaintiff

    vs

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant

Case No. 1:10-cv-916
Barrett, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

       Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications

for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is

before the Court on plaintiff's Statement of Errors (Doc. 6), the Commissioner's response in

opposition (Doc. 7), and plaintiff's reply memorandum. (Doc. 8).

## I. Procedural Background

       Plaintiff filed applications for DIB and SSI in October 2006, alleging disability since

1985 due to cerebral palsy and scoliosis. Plaintiff's applications were denied initially and upon

reconsideration. Plaintiff, proceeding pro se, requested and was granted a de novo hearing

before Administrative Law Judge (ALJ) Larry A. Temin. Plaintiff, plaintiff's mother, plaintiff's

grandmother, and a vocational expert (VE) appeared and testified at the ALJ hearing.[1] On

August 13, 2009, the ALJ issued a decision denying plaintiff's DIB and SSI applications.

Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ

the final administrative decision of the Commissioner.

---

[1] The ALJ hearing referred to in this Report and Recommendation is the June 15, 2009 hearing. (Tr. 20-50). A prior hearing was held April 17, 2009 for informational purposes. (Tr. 51-60).

## II. Medical Evidence

On April 1, 2003, Junichi Tamai, M.D., an orthopedic surgeon with Children's Hospital Surgical Services, examined plaintiff for complaints of pain in his right foot and lower back. (Tr. 235). Dr. Tamai noted that plaintiff was 17 years, 8 months old with a history of cerebral palsy. *Id.* Dr. Tamai noted that plaintiff underwent a bilateral hamstring and heel cord lengthening at the age of 5 for which he had worn long leg casts; staples were placed in both of his feet which were never removed; he had undergone Botox therapy at age 9; and he had received TENS (transcutaneous electrical nerve stimulation) therapy. *Id.* Dr. Tamai found that plaintiff was healthy and active, and examination demonstrated that plaintiff had full function of bilateral upper extremities and bilateral lower extremities. *Id.* Plaintiff was able to walk without assistance but tended to shuffle his feet and crouch. *Id.* Plaintiff had normal sensation of lower extremities bilaterally. (Tr. 236). An x-ray of plaintiff's ankles was taken and revealed that the staples were overlying plaintiff's talonavicular joint. (Tr. 237). Dr. Tamai recommended surgery to remove the staples to relieve the foot pain and referred plaintiff to physical therapy. (Tr. 236).

Plaintiff underwent surgery on May 23, 2003 to remove the staples in his right foot.[2] (Tr. 225). The surgery was scheduled to address plaintiff's reports of pain with increased activity. *Id.* Dr. Tamai performed the surgery which plaintiff tolerated well. (Tr. 226). Plaintiff was released with prescriptions for Tylenol with Codeine and a limited supply of Percocet due to his recent release from an alcohol and substance abuse facility. *Id.*

---

[2] The staples were originally implanted to prevent planovalgus deformity. A planovalgus (equinovalgus) deformity is "a foot abnormality in which the heel is elevated and turned outward from the midline of the body." *See* http://www.medcyclopaedia.com/library/topics/volume_iii_1/e/equinovalgus_deformity.aspx (last visited January 13, 2012).

On June 5, 2003, plaintiff was treated by Dr. Tamai for removal of the cast from his May 2003 surgery as it had gotten wet during a fishing trip. (Tr. 223). The cast was removed, plaintiff's skin was in good condition, and he was instructed not to play basketball. *Id.* An x-ray demonstrated small fragmentation on the right foot where the staples were placed and cortical thickening in the second through fourth proximal phalanges. (Tr. 224).

Plaintiff was treated at Children's Hospital Medical Center on June 7, 2004 for muscle spasm. (Tr. 219-222). Plaintiff reported sharp pains in his back and legs at a 9 out of 10 lasting approximately one week and worsened by neck movement. (Tr. 220). Examination revealed tenderness in plaintiff's spine, neck, and lumbar muscles but straight leg raising was negative. (Tr. 221). Plaintiff was discharged in stable condition but with ongoing severe pain and given prescriptions for Naproxen and Flexeril. (Tr. 219-22).

Plaintiff went to the emergency room on October 7, 2004 for complaints of right foot pain. (Tr. 290-93). Plaintiff reported that he twisted his ankle while playing basketball and further reported that he had staples removed from his foot. (Tr. 290). Examination showed right foot tenderness and an x-ray showed a hallux valgus deformity but no acute disease. (Tr. 290-91). Plaintiff was diagnosed with a right ankle sprain and instructed to rest and ice his ankle, use an air splint, and take Naproxen. *Id.*

On January 24, 2006, plaintiff underwent a consultative examination with Loraine Glaser, M.D., at the request of the Social Security Administration. (Tr. 245-53). Upon physical examination, plaintiff had: 5/5 strength in his upper extremities; 5/5 strength in his hip flexors and extensors, knee flexors, and extensors; 4/5 strength in his foot dorsiflexors, planarflexors, inverters, and evertors; 3/5 strength in his great toe extensors; normal grasp, manipulation, pinch,

3

and fine coordination findings; no muscle spasm or atrophy; normal range of motion throughout; and restricted range of motion in his left knee and both ankles. (Tr. 245-48). Dr. Glaser noted that plaintiff complained of aching discomfort in his calves and low back and tightness in his left knee which had gotten worse over the last year. (Tr. 249). At the examination plaintiff walked with a mild limp due to a valgus deformity at the knees. (Tr. 249-50). Plaintiff's range of motion in his spine and arms was normal, as were his muscle and grasp strength and manipulative ability. (Tr. 250). Plaintiff was unsteady ambulating heel-to-toe but straight leg raising was normal. *Id*. Neurological examination revealed no evidence of muscle weakness or atrophy and deep tendon and Achilles tendon reflexes were normal. *Id*. Hip abduction and flexion of the knees were normal, but range of motion in the ankles was diminished. (Tr. 251). An x-ray of plaintiff's spine was taken and demonstrated minimal narrowing of L5-S1. (Tr. 253). Dr. Glaser opined that plaintiff was in excellent medical health aside from ambulating with a minimal limp. (Tr. 251). Dr. Glaser further opined that plaintiff appeared capable of performing at least a moderate amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting, and carrying heavy objects. *Id*. Further, Dr. Glaser opined that plaintiff had no difficulty reaching, grasping, and handling objects and did not have any visual, communication, and/or environmental limitations. *Id*.

On July 16, 2007, Anton Freihofner, M.D., a state agency non-examining physician, completed a physical residual functional capacity (RFC) assessment. (Tr. 254-61). Dr. Freihofner's findings were based on Dr. Tamei's April 2003 examination and Dr. Glaser's consultative examination, as well as other objective and clinical evidence in the file. (Tr. 255, 262). Dr. Freihofner opined that plaintiff had the RFC to: occasionally lift/carry 20 pounds;

frequently lift/carry 10 pounds; stand and/or walk for a total of 6 hours in an 8-hour workday; and sit for a total of 6 hours in an 8-hour workday. (Tr. 255). Dr. Freihofner further opined that plaintiff could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs but should never climb ladders, ropes, or scaffolds. (Tr. 256). Dr. Freihofner determined that plaintiff had no manipulative, visual, communicative, or environmental limitations. (Tr. 257-58). Dr. Freihofner opined that plaintiff's subjective report that he was able to stand/walk for only 15 minutes at a time was partly credible and noted that he was able to dress and bathe himself in a sitting position and able to do laundry. (Tr. 259). This assessment was affirmed by state agency reviewer Leslie Green, M.D. (Tr. 262).

Plaintiff treated with Bernard Lenchitz, M.D., of the HealthCare Connection from February 25, 2008 to May 28, 2008. (Tr. 272-79). A February 25, 2008 physical examination revealed largely normal findings including motor strength of 5/5, and 4/5 in the left leg, and plaintiff was noted as having a shuffling walk. (Tr. 277). There was no pain upon palpation of plaintiff's spine. *Id*. At an April 14, 2008 examination, plaintiff was noted as having an abnormal, shuffling gait and decreased range of motion in his left hip and left ankle. (Tr. 275). Plaintiff had full strength bilaterally and normal range of motion on his right side. *Id*.

Plaintiff began treating at the Children's Hospital Adults in Transition Clinic on June 18, 2008. (Tr. 285-86). Plaintiff was evaluated by Thomas Webb, M.D., a neurodevelopmental disability specialist, who noted that plaintiff was not currently taking any prescribed medications and started him on Baclofen. (Tr. 285). Dr. Webb reported that plaintiff had spastic diplegia cerebral palsy since birth and noted that his legs and to a lesser degree, his arms were affected. (Tr. 269). Upon examination, Dr. Webb noted that plaintiff was able to ambulate but had a tight,

5

spastic gait and that he experiences pain in his feet, knees, hips, and back whenever he is required to walk, stand, or sit for any period of time. (Tr. 269, 285). Plaintiff reported that the pain is worse on his left side and is located in his feet, knees, hips, and back. (Tr. 285). Dr. Webb noted that plaintiff was moderately to severely impaired, even if only briefly, in his ability to walk, lift, push, pull, or squat. *Id*. Plaintiff further reported difficulty standing for more than 15 to 30 minutes, difficulty sitting for more than an hour, and associated fatigue and difficulty sleeping. *Id*. Dr. Webb reported that plaintiff's pain made sleeping difficult which severely affected plaintiff's mood and resulted in self-medication. (Tr. 269). Plaintiff was advised to take Tylenol or ibuprofen for pain and instructed to return in one month. (Tr. 286).

On August 13, 2008, Dr. Webb drafted a one-page letter in which he opined that plaintiff had diplegic cerebral palsy which affects his ability to sit, stand, walk, run, squat, lift, push, and pull. Dr. Webb opined that plaintiff is unable to work and requires ongoing medical care including evaluations and therapy from occupational and physical therapists, assistive technology, physiatry, and orthopedics. Dr. Webb further noted that plaintiff was taking Baclofen three times per week and requires long-term medications to treat his chronic muscle spasticity and pain.[3] (Tr. 265).

Plaintiff was treated at the emergency room on September 24, 2008 for a lip laceration. (Tr. 287-93). Plaintiff received the injury to his upper lip when he tripped and fell while carrying furniture. (Tr. 287). Plaintiff declined sutures and was discharged with instructions for wound care. *Id*.

---

[3] Spasticity is defined as "[o]ne type of increase in muscle tone at rest; characterized by increased resistance to passive stretch, velocity dependent and asymmetric about joints (*i.e.*, greater in the flexor muscles at the elbow and extensor muscles at the knee). Exaggerated deep tendon reflexes and clonus are additional manifestations." *See* http://www.dictionary.webmd.com/terms/spasticity (last visited January 18, 2012).

Plaintiff had a consultation at the Adults in Transition Clinic on October 2, 2008 with Katherine Thoman, R.N., C.N.P. (Tr. 263-64). Nurse Thoman noted that plaintiff had: cerebral palsy characterized by gait abnormality, falling episodes, and difficulty with sustained activity; depression characterized by hopelessness and difficulty accepting his disability; and an acute left eye infection possibly due to a bug bite. (Tr. 263). Plaintiff was instructed to increase his Baclofen prescription, was prescribed Zoloft for depression, and was referred to a social worker and to specialists for spasticity treatment and orthopedic needs. (Tr. 263-64).

On November 10, 2008, plaintiff returned to the Adults in Transition Clinic for follow-up with Dr. Webb. (Tr. 266-68). Plaintiff reported back and leg pain and gait difficulties. (Tr. 266). Dr. Webb noted that plaintiff was having ongoing spasticity of his lower extremities, difficulty walking, foot cramping, and left leg trembling, particularly with ambulation for prolonged periods of time. (Tr. 266). Plaintiff reported that he had not noticed significant changes in his spasticity from the Baclofen; however, Dr. Webb noted that plaintiff had a markedly smoother walk with a lot less spasticity and a less crouched gait than in the past. *Id*. Examination revealed reflexic reflexes in the lower extremities, but there was slightly more stretch at the hip and knee. *Id*. Plaintiff had a full range of motion at the neck and upper extremities, but the lower extremities had tightness around the hips but could be extended flat. (Tr. 267). Plaintiff's knees had some moderate spasticity and could not be completely straightened. *Id*. Plaintiff's feet could almost be brought to neutral, better on the right than the left, and reflexes remained 2+ and equal in the upper extremities and 3+ and equal in the knees and ankles. *Id*. Dr. Webb opined that plaintiff was not able to stand for more than one-half to one hour at this time, and that he was limited to sitting only several hours per day. *Id*. Dr. Webb

7

further opined that plaintiff had decreased endurance and was unable to push, pull, lift, squat, or climb safely. *Id.* Dr. Webb noted that plaintiff reported interest in obtaining a GED and getting back to work. *Id.* Plaintiff was advised to return for follow-up in one to two months and his Baclofen prescription was increased. (Tr. 266-67).

On April 15, 2009, plaintiff returned for treatment at the Adults in Transition Clinic and reported that he was taking his Zoloft as prescribed not the Baclofen because he received no benefit from it. (Tr. 295). Plaintiff continued to report low back and leg pain, particularly with ambulation or prolonged standing and reported a strong interest in having tendon release surgery. *Id.* Dr. Webb discussed the surgery and informed plaintiff that he would be required to wear leg braces post-surgery and noted that plaintiff strongly does not want to wear braces throughout the day. *Id.* In regards to his endurance and fine motor difficulties, plaintiff was referred to occupational and physical therapists to be evaluated for adaptive equipment, such as writing aids. (Tr. 295-96). Plaintiff reported ongoing depression due to inability to maintain employment because of his endurance issues. (Tr. 296). Dr. Webb noted that he drafted a letter for disability purposes due to his opinion that plaintiff needs to receive disability benefits "at least while he [is] undergoing the procedures to see if they can help with his ambulation and endurance." *Id.* Plaintiff was continued on Zoloft to address his depression. *Id.* Physical examination demonstrated that plaintiff had a crouched gait with tight heel cords and gastroc hamstrings. *Id.* Plaintiff had contractures at the hips, knees, and ankles. *Id.* Dr. Webb noted that plaintiff's gait was fairly straight to start with but as walking continues he begins to crouch worse and have out toeing. *Id.*

The record also includes an April 15, 2009 one-page handwritten letter drafted by Dr. Webb in which he states that plaintiff has cerebral palsy and associated lower extremity spasms, as well as chronic back pain from spasticity. Dr Webb opined that plaintiff has a very limited ability to ambulate, lift, or sit for any length of time. Dr. Webb further opined that plaintiff is permanently disabled. (Tr. 271).

## III. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

9

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a) (4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson* v. *Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act from April 1, 2005 through March 31, 2007.

2. The claimant has not engaged in substantial gainful activity since July 27, 1985, the alleged onset date (20 C.F.R. 404.1571 *et seq.,* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: cerebral palsy and scoliosis (20 C.F.R. 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (404.1525, 404.1526, 416.925 and 416.926).

5. After careful consideration of the entire record, the [ALJ] finds that the claimant has the residual functional capacity to perform the requirements of work activity except as follows: He can lift/carry/push/pull up to 10 pounds occasionally and 5 pounds frequently. He can stand and/or walk for a total of 2 hours in an 8-hour workday (for 15 minutes at a time, and then must be able to sit

10

for 2 to 3 minutes). He can sit for a total of 6 hours in an 8-hour workday (for 30 minutes at a time, and then must be able to stand for 2 to 3 minutes). He can only occasionally stoop, kneel, crouch, and climb ramps and stairs. He should not crawl, balance, climb ladders, ropes or scaffolds or work at unprotected heights or around hazardous machinery.

6. The claimant has no past relevant work (20 C.F.R. 404.1565 and 416.965).

7. The claimant was . . . a younger individual on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1563 and 416.963).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 27, 1985 through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).

(Tr. 12-19).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §

405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by

substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v.*

*Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*,

478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545–46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

On appeal, plaintiff argues that the ALJ did not properly weigh the medical opinions. Specifically, plaintiff asserts the ALJ erred in not giving controlling or significant weight to the opinion of plaintiff's treating physician, Dr. Webb. The Commissioner responds that the ALJ's decision to give less weight to Dr. Webb's opinion is substantially supported by the record as a whole.

12

"In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997). Likewise, a treating physician's opinion is entitled to weight substantially greater than that of a non-examining medical advisor. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Lashley v. Sec'y of H.H.S.,* 708 F.2d 1048, 1054 (6th Cir. 1983). The weight given a treating physician's opinion on the nature and severity of impairments depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 404.1527(d); *Harris*, 756 F.2d at 431. If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. § 1527(d)(2); *see also Walters*, 127 F.3d at 530. If not contradicted by any substantial evidence, a treating physician's medical opinions and diagnoses are afforded complete deference. *Harris*, 756 F.2d at 435. *See also Cohen v. Sec'y of H.H.S.*, 964 F.2d 524, 528 (6th Cir. 1992). The opinion of a non-examining physician is entitled to little weight if it is contrary to the opinion of the claimant's treating physicians. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). If the ALJ rejects a treating physician's opinion, the ALJ's decision must be supported by a sufficient basis which is set forth in his decision. *Walters*, 127 F.3d at 529; *Shelman*, 821 F.2d at 321.

Here, the ALJ determined that plaintiff had the RFC to perform sedentary work based on the opinions of consultative examiner Dr. Glaser and the opinions of the non-examining state agency doctors:

He can lift/carry/push/pull up to 10 pounds occasionally and 5 pounds frequently. He can stand and/or walk for a total of 2 hours in an 8-hour workday (for 15 minutes at a time, and then must be able to sit for 2 to 3 minutes). He can sit for a total of 6 hours in an 8-hour workday (for 30 minutes at a time, and then must be able to stand for 2 to 3 minutes). He can only occasionally stoop, kneel, crouch, and climb ramps and stairs. He should not crawl, balance, climb ladders, ropes or scaffolds or work at unprotected heights or around hazardous machinery.

(Tr. 17).

In contrast, treating physician Dr. Webb opined that plaintiff was: moderately to severely limited in his ability to sit, stand, walk, run, squat, lift, push, and pull (Tr. 265, 267, 269, 271); limited in his ability to stand for more than thirty minutes to an hour at a time (Tr. 267); limited to sitting several hours a day (Tr. 267); and was unable to work. (Tr. 265, 271, 296). Plaintiff argues that the ALJ erred by not giving greater weight to Dr. Webb's opinion that plaintiff has severe, debilitating impairments. Plaintiff asserts that the reasons stated by the ALJ for discounting Dr. Webb's opinions are unsupported by the record and, accordingly, the ALJ erred by not adopting Dr. Webb's opinion that plaintiff is very limited in his functional abilities and is unable to engage in full-time employment. For the reasons stated below, the Court finds plaintiff's arguments well-taken.

The Sixth Circuit has recently reaffirmed the long-standing principle that the "ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent

14

with the other substantial evidence in [the] case record.'" *Blakley v. Comm'r of Soc. Sec.*, 581

F.3d 399, 406 (6th Cir. 2009) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th

Cir. 2004); 20 C.F.R. § 404.1527(d)(2)). When the ALJ declines to give controlling weight to a

treating physician's assessment, "the ALJ must still determine how much weight is appropriate

by considering a number of factors, including the length of treatment relationship and the

frequency of examination, the nature and extent of the treatment relationship, supportability of

the opinion, consistency of the opinion with the record as a whole, and any specialization of the

treating physician." *Blakley*, 581 F.3d at 406.

In accordance with this rule, the ALJ must give "good reasons" for the ultimate weight

afforded the treating physician opinion, based on the evidence in the record, and the reasons

must be sufficiently specific to enable meaningful review of the ALJ's decision. *Id*. at 406-07

(citing 20 C.F.R. § 404.1527(d)(2); Social Security Ruling 96-2p, 1996 WL 374188, at *5;

*Wilson*, 378 F.3d at 544). The ALJ's failure to adequately explain the reasons for the weight

given a treating physician's opinion "*denotes a lack of substantial evidence*, even where the

conclusion of the ALJ may be justified based upon the record." *Blakley*, 581 F.3d at 407

(emphasis in the original) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir.

2007)).

As an initial matter, the Court acknowledges that an ALJ is not required to accept a

physician's conclusion that his patient is "unemployable." Whether a person is disabled within

the meaning of the Social Security Act is an issue reserved to the Commissioner, and a treating

physician's opinion that his patient is disabled is not "giv[en] any special significance." 20

15

C.F.R. § 404.1527(e). *See Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004) ("The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician.") (citation and brackets omitted).

Nevertheless, the other justifications given by the ALJ for discounting Dr. Webb's opinions fail to satisfy the "good reasons" standard set forth by the Sixth Circuit in *Wilson.* The ALJ discounted Dr. Webb's opinions that plaintiff was very limited in his ability to sit for any length of time; moderately to severely impaired in his ability to walk, lift, push, pull, or squat; and significantly fatigued as a result of his chronic leg and back pain. In making this decision, the ALJ reasoned:

> Ultimately, Dr. Webb opined that the claimant could not maintain employment due to his severe impairments, specifically his difficulty ambulating and limited endurance. It is noted, however, that the claimant testified at the hearing regarding his energy level and did not indicate that he was significantly fatigued or lacked endurance. Further, Dr. Webb's opinion is not well supported by the medical evidence and objective findings on exam and is therefore given less weight. Dr. Webb's notes do note a limited ability to ambulate, lift or sit for prolonged periods; in his notes of a June 18, 2008 office visit he notes difficulty with standing over 15 to 30 minutes and sitting over one hour. The residual functional capacity given accommodates these limitations.

(Tr. 17) (citations omitted). In light of the evidence of record, the ALJ's findings with regard to Dr. Webb's opinion are not substantially supported by the record.

The testimony plaintiff gave at the ALJ hearing did not contradict nor was it inconsistent with Dr. Webb's treatment notes and opinions that plaintiff suffers from significant fatigue (Tr. 285) and has decreased endurance as a result of his cerebral palsy. (Tr. 267). At the hearing during a line of questioning involving plaintiff's depression, the ALJ asked plaintiff, "How is

16

your energy level?" (Tr. 34). Plaintiff responded, "It's, it's, I would say just what it's always been, except now I just found myself a little, a little bit more in, tight and a little bit uncomfortable." *Id.* The ALJ determined that because this testimony did not indicate that plaintiff was significantly fatigued or lacked endurance it was inconsistent with Dr. Webb's opinion. (Tr. 17). Notably, the ALJ did not ask plaintiff if he was significantly fatigued or if he lacked endurance. Plaintiff's failure to volunteer these specific responses is not an indicator of the unreliability of Dr. Webb's clinical opinion.[4] This is especially true given that the above exchange was the only testimony the ALJ elicited from plaintiff regarding his "energy level" and the fact that plaintiff was proceeding pro se at the hearing.

"Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000). "The ALJ has a 'special duty' to develop the administrative record and ensure a fair hearing for claimants that are unrepresented by counsel." *Lipsey v. Comm'r of Soc. Sec.*, No. 1:09-cv-1161, 2011 WL 761484, at *5 (W.D. Mich. Jan. 24, 2011) (citing *Duncan v. Sec'y of H.H.S.*, 801 F.2d 847, 856 (6th Cir. 1986); *Lashley*, 708 F.2d at 1051-52). Despite questioning plaintiff about his "energy level," the ALJ did not fully develop

---

[4] The Commissioner argues that plaintiff's testimony essentially demonstrates that plaintiff's energy remained "constant over time," and, accordingly, contradicted Dr. Webb's findings of fatigue and endurance problems. The Court disagrees. Plaintiff's testimony on his actual level of energy is imprecise. Plaintiff did not respond that he had a low, medium, or high level of energy; rather, he testified that his energy was "just what it's always been, except now I just found myself a little, a little bit more in, tight and a little bit uncomfortable." (Tr. 34). It is unclear from this testimony whether plaintiff experiences fatigue or decreased endurance. Accordingly, the Court declines to adopt the Commissioner's position as it requires the assumption of an unsupported inference. The testimony could just as easily be interpreted to infer that plaintiff has consistently experienced low and/or decreased energy.

17

the record with respect to plaintiff's physical fatigue and lack of endurance. In light of plaintiff's pro se status and the vague nature of plaintiff's statement, plaintiff's minimal testimony is not a sufficiently "good reason" justifying the ALJ's decision to discount Dr. Webb's medical opinion.

The ALJ's finding on this score is further undermined by other evidence of record which supports Dr. Webb's opinion that plaintiff suffers from fatigue and decreased endurance. For example, plaintiff testified at the hearing that he used to enjoy fishing, but he was no longer able to engage in such strenuous activity. (Tr. 33, 36). Also, plaintiff and plaintiff's grandmother testified that he required the use of a wheelchair when traveling because he was unable to walk longer distances. *See* Tr. 37 (plaintiff testified he used a wheelchair because he is unable to walk through the airport); Tr. 41 (plaintiff's grandmother testified that plaintiff required use of a wheelchair while on vacation). Plaintiff also reported on two Symptoms Reports that he had weakness and is unable to do many things because he lacks the physical endurance to complete the task. (Tr. 157, 160-63, 201). Further, plaintiff reported that he did not go out of his home alone because he was afraid he would need help and not have any. (Tr. 163). Lastly, plaintiff gave several reports to Dr. Webb regarding his fatigue and lack of endurance. *See* Tr. 285 (at his initial visit plaintiff reported recurrent significant fatigue associated with pain and stated he was unable to work manual labor jobs due to pain and fatigue); Tr. 263 (plaintiff reported difficulty with sustained activity); Tr. 296 (plaintiff reported depression because of his inability to work due to his endurance problems). In light of plaintiff's pro se status at the ALJ hearing and the evidence of record supporting Dr. Webb's opinions regarding plaintiff's fatigue and endurance

18

problems, the ALJ's first stated basis for discounting the treating physician's opinions is without substantial support in the record.[5]

The ALJ also discounted Dr. Webb's opinions because they allegedly were "not well supported by the medical evidence and objective findings on exam . . . ." While it may be justifiable to give less weight to a treating physician's opinion where it is contradicted by other evidence of record, *see Gaskin v. Comm'r of Soc. Sec.*, 280 F. App'x 472, 475 (6th Cir. 2008), the ALJ must provide evidentiary support for these "good reasons." *Rogers*, 486 F.3d at 242. Here, the ALJ discarded Dr. Webb's opinion without identifying any contradictory evidence or explaining the purported inconsistencies. To facilitate meaningful judicial review the ALJ must state the evidence considered which supports his conclusion and also give some indication of the evidence rejected. *Hurst v. Sec'y of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985). *See also Shelman*, 821 F.2d at 321. Here, the ALJ has failed to provide the necessary support for his conclusory finding that evidence of record contradicts or is inconsistent with Dr. Webb's opinion.

Further, the ALJ's determination that Dr. Webb's opinions are not well supported by the medical evidence and objective examination findings is contradicted by the medical evidence of

---

[5] In response, the Commissioner argues that Dr. Webb's opinion on plaintiff's endurance and fatigue is internally inconsistent because Dr. Webb referred plaintiff to occupational therapy which, according to the Commissioner, indicates Dr. Webb believed plaintiff could secure future employment. (Doc. 7, p. 12). This argument is not well-taken. The record in question states, "For [plaintiff's] cerebral palsy today we did connect him with United Cerebral Palsy who will be looking into assistive technology devices that will assist Deron with both a GED as well as future work. They will be looking specifically at word processing equipment that would help with typing and writing." (Tr. 266). This notation contains no medical opinion that plaintiff is capable of full-time employment; rather, the treatment notes include Dr. Webb's opinion that he believes plaintiff is significantly limited in his ability to stand and sit. The fact that Dr. Webb *also* referred plaintiff to an organization that would be "looking into" assistive aids is not inconsistent with his opinion on plaintiff's physical abilities.

record. Dr. Webb opined that plaintiff experienced disabling difficulty in walking. All examining doctors of record have found that plaintiff has an abnormal gait, supporting Dr. Webb's opinion. *See* Tr. 235 (Dr. Tamai noted that plaintiff shuffled his feet and crouched while walking); Tr. 249-50 (Dr. Glaser reported that plaintiff walked with a mild limp due to a valgus deformity at the knees and was unsteady ambulating); Tr. 275, 277 (Dr. Lenchitz found that plaintiff had an abnormal, shuffling gait)[6]; Tr. 285, 266, 296 (Dr. Webb noted on several occasions that plaintiff had a crouched, spastic gait and experienced difficulty walking). Further, all of the examining doctors of record have reported decreased range of motion in plaintiff's lower extremities. *See* Tr. 248, 251 (Dr. Glaser noted plaintiff had diminished range of motion in his ankle joints and left knee); Tr. 275 (Dr. Lenchitz found that plaintiff had decreased range of motion in his left hip and ankle); Tr. 267, 296 (Dr. Webb examined plaintiff and found decreased range of motion around the hips, spasticity at the knees, and contractures at the hips, knees and ankles). In light of the above, it is clear that there is evidence from every examining doctor that plaintiff has difficulty walking and decreased range of motion – findings which support Dr. Webb's opinions. The ALJ's decision fails to identify or explain how any of the evidence of record is inconsistent or contradicts Dr. Webb's opinions. Accordingly, the ALJ's decision to discount Dr. Webb's opinion that plaintiff's ambulatory impairments are disabling is unsupported by the clinical evidence of record.

---

[6] In his response brief, the Commissioner misstated Dr. Lenchitz's examination results. The Commissioner stated that Dr. Lenchitz found normal foot movement and only a mildly reduced range of motion in the left ankle. (Doc. 7, p. 13). However, the treatment notes indicate that plaintiff only had normal foot motion *on the right* with a decreased range of motion at the left ankle and hip. (Tr. 275). Further, there is no notation that the decreased range of motion was "only mild." *Id.*

The Commissioner argues that even though the ALJ declined Dr. Webb's ultimate conclusion regarding the severity of plaintiff's impairments, the ALJ still accommodated the limitations set forth in Dr. Webb's treatment notes and plaintiff's testimony in formulating the RFC. (Doc. 7 at 15-16). The ALJ limited plaintiff to standing or walking "2 hours in an 8-hour workday (for 15 minutes at a time, and then must be able to sit for 2 to 3 minutes); [to sitting] for a total of 6 hours in an 8-hour workday (for 30 minutes at a time, and then [he] must be able to stand for 2 to 3 minutes)." (Tr. 15). The ALJ also limited plaintiff to only occasional stooping, kneeling, crouching, and climbing ramps and stairs, and stated that plaintiff should not crawl, balance, climb ladders, ropes, or scaffolds or work at unprotected heights or around hazardous machinery. (Tr. 15). The Commissioner contends that these limitations are in line with, if not more generous than, those assigned by Dr. Webb. *See* Tr. 269 (in June 2008 plaintiff reported difficulty standing greater than 15 to 30 minutes and sitting for more than one hour); Tr. 285 (in June 2008 Dr. Webb described plaintiff as moderately to severely impaired in his ability to walk, lift, push, pull, or squat); Tr. 267 (in August 2008 Dr. Webb opined that plaintiff could not stand for more than 30 minutes to an hour at a time or sit more than several hours a day). Although the Commissioner has correctly identified that the ALJ formulated an RFC which includes some of Dr. Webb's assigned limitations, the Court disagrees with the assertion that the RFC accurately reflects plaintiff's physical abilities as set forth in Dr. Webb's treatment notes.

With respect to plaintiff's ability to stand, walk, and sit, the RFC formulated by the ALJ does not address Dr. Webb's opinion that plaintiff is physically unable to sustain these activities for a full work day. Dr. Webb specified that plaintiff "could not stand for more than one-half to

21

one hour at [a] time [and that] sitting would also be limited to several hours per day" due to his

decreased endurance. (Tr. 267). Further, immediately before the ALJ hearing Dr. Webb opined

that plaintiff "has a very limited ability to ambulate, lift or sit *for any length of time*." (Tr. 271).

The RFC formulated by the ALJ does not reflect the sitting limitations imposed by Dr. Webb,

nor does it recognize Dr. Webb's opinion that plaintiff has limited endurance and decreased

stamina, in general, due to symptoms associated with his cerebral palsy.

In addition, the ALJ purported to accommodate plaintiff's testimony that he can stand for

15 to 20 minutes and sit for 30 to 40 minutes (Tr. 31-32) by imposing alternate sitting and

standing requirements in the RFC. Yet, the ALJ never asked plaintiff about his endurance or his

ability to sit, stand, or walk on a sustained basis, *i.e.*, for eight hours per day, five days per week.

Plaintiff's testimony does not imply he has the residual functional capacity to sit and stand on a

sustained basis for full-time work. Thus, contrary to the Commissioner's arguments, the RFC

fails to accurately reflect plaintiff's physical abilities as reflected in Dr. Webb's treatment notes

or plaintiff's testimony.

Moreover, the ALJ's opinion does not adhere to the requirements of Section 404.1527(d)

for evaluating medical opinion evidence of record. The ALJ gave the most weight ("significant

weight") to the opinion of Dr. Glaser, a one-time examiner and the least weight ("some weight")

to the opinions of Dr. Webb, plaintiff's treating physician. While § 404.1527(d) does not

mandate that a treating physician's opinion always be given the most weight, it does specifically

require that the ALJ consider the length of the treating relationship, the nature and extent of the

treating relationship, and the specialization area of the treating physician. 20 C.F.R. §
404.1527(d).

While the ALJ's opinion noted that Dr. Glaser examined plaintiff only one time in
January 2006, whereas Dr. Webb treated plaintiff regularly from June 2008 to April 2009, the
ALJ did not address the significance of the length of the treatment relationships or the timing of
the respective medical opinions. As treating sources such as Dr. Webb "are likely to be the
medical professionals most able to provide a detailed, longitudinal picture" of plaintiff's
impairments, the ALJ's failure to provide supporting evidence for his assertion that Dr. Webb's
opinions were contradicted by other medical evidence was erroneous. *See* 20 C.F.R. §
404.1527(d)(2).

As a practical matter, the ALJ should have addressed the timing of Dr. Glaser's and Dr.
Webb's examinations and/or treatment while weighing their medical opinions. The timing of
these opinions is particularly significant in this matter because plaintiff has consistently reported
that his symptoms and impairments are getting worse over time.[7] Dr. Webb treated plaintiff
regularly in the year immediately preceding the ALJ hearing - years after Dr. Glaser examined
plaintiff - and his opinion that plaintiff had severe impairments due to symptoms associated with
his cerebral palsy was dated one month prior to the hearing. (Tr. 271). Dr. Webb's more recent
opinion that plaintiff suffers disabling impairments is consistent with the record as a whole as it

---

[7] "Cerebral palsy itself is not progressive (i.e. brain damage does not get worse); however, secondary
conditions, such as muscle spasticity, can develop which may get better over time, get worse, or remain the same."
*See* http://www.affnet.ucp.org/ucp_generaldoc.cfm/1/9/37/37-37/447 (last visited January 18, 2012).

23

supports plaintiff's reports that his symptoms are worsening with time. *See* Tr. 41, 202, 204, 249; *see also* 20 C.F.R. § 404.1527(d)(4).

Further, the ALJ's decision does not address the areas of specialization of the medical sources of record. Dr. Webb is a neurodevelopmental disability specialist, *see* Tr. 271, and accordingly has significant expertise in treating patients with cerebral palsy.[8] There is no indication in the record that Dr. Glaser is similarly a specialist in treating cerebral palsy patients. Moreover, there is no indication that the ALJ considered Dr. Webb's specialty area in determining what weight to afford his opinions. *See* 20 C.F.R. § 404.1527(d)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."). The ALJ's failure to mention or apply the above-mentioned regulatory factors in deciding to reject plaintiff's treating physician's opinions in favor of the opinion of a one-time examining doctor "denotes a lack of substantial evidence." *Blakley*, 581 F.3d at 407.

Lastly, with respect to the opinion of the non-examioning state agency physician, Dr. Freihofner, the ALJ's decision to give more weight to his opinion than to Dr. Webb's is without substantial support. Dr. Freihofner's RFC assessment was drafted in July of 2007, nearly two years before the ALJ hearing and was based on an incomplete medical record. Dr. Freihofner did not have the opportunity to review plaintiff's medical treatment with Dr. Webb, the doctor with whom plaintiff had the longest and most recent medical treatment. As this subsequent

---

[8] Cerebral palsy is a neurodevelopmental disorder. *See* http://www.cdc.gov/ncbddd/cp/facts.html (last visited January 19, 2012).

evidence reflects ongoing treatment, the Court requires "some indication that the ALJ at least considered these facts before giving greater weight to an opinion that is not 'based on a review of a complete case record.'" *Blakley*, 581 F.3d at 409 (quoting *Fisk v. Astrue*, 253 F. App'x 580, 585 (6th Cir. 2007) (quoting Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *3)). Moreover, the ALJ's decision to afford greater weight to the remote and partially informed opinion of Dr. Freihofner, a non-examining physician, is improper in light of the contrary, complete, and proximal opinion of Dr. Webb, plaintiff's treating physician. *See Shelman*, 821 F.2d at 321.

The ALJ failed to identify the evidence he relied on in rejecting Dr. Webb's opinion or acknowledge that Dr. Freihofner's RFC assessment was based on an incomplete record. Further, the ALJ did not address the relevant factors enunciated in § 404.1527(d), such as Dr. Webb's expertise in neurodevelopmental disabilities, *i.e.*, cerebral palsy, in assigning weight to the medical opinions of record. These failures are not harmless error as they deprive the Court of the ability to meaningfully review the ALJ's decision. *Blakely*, 581 F.3d at 409 (citing *Wilson*, 378 F.3d at 544). The undersigned concludes that the ALJ erred in formulating plaintiff's RFC based on Dr. Glaser's and Dr. Freihofner's opinions without acknowledging the remoteness of their opinions, their specialty areas, or the fact that Dr. Freihofner's opinion was based on an incomplete record. Further, the ALJ erred by failing to provide "good reasons," supported by the evidence, for rejecting Dr. Webb's opinion. Consequently, plaintiff's assignment of error should be sustained.

25

**IV. This matter should be reversed and remanded for further proceedings.**

The record strongly suggests that plaintiff's impairments were disabling at least by the start of his treatment with Dr. Webb in 2008. However, plaintiff's date last insured for purposes of DIB was March 17, 2007. Because the current record does not adequately establish plaintiff's entitlement to DIB benefits as of his date last insured, and all essential factual issues have not been resolved, this matter should be reversed and remanded for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g). *Faucher,* 17 F.3d at 176. On remand, the ALJ should properly evaluate the weight afforded to Dr. Webb's opinions as set forth in this opinion and as required by 20 C.F.R. § 404.1527(d), § 404.927(d), and for redetermination of plaintiff's RFC.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

Date: 1/27/2012

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

DERON MOORE,
    Plaintiff

     vs

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant

Case No. 1:10-cv-916
Barrett, J.
Litkovitz, M.J.

### NOTICE REGARDING OBJECTION TO REPORT AND RECOMMENDATION

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).